UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNIVERSAL AM-CAN, LTD.,

    Plaintiff,

v.                                          Case No. 3:09cv292/MCR/EMT

ACCURATE WELDING SERVICES, LLC ,

    Defendant.
_____/

## O R D E R

    Before the court is Plaintiff Universal Am-Can, Ltd.'s ("Universal") Request for Entry of Default Judgment (doc. 8) against Defendant Accurate Welding Services, LLC ("Accurate Welding"). On November 16, 2009, the clerk entered default against Accurate Welding for failing to respond to Universal's complaint, and Universal filed the instant motion seeking entry of default judgment on January 14, 2010.

    Universal is an interstate motor carrier with its principal place of business in Warren, Michigan. According to Universal, it entered into an agreement with Chromalloy Gas Turbine, Corp. ("Chromalloy"), a Florida corporation, to transport a welding machine from Fort Walton Beach, Florida to Windsor Locks, Connecticut, where Accurate Welding has its principal place of business. The equipment arrived in a damaged condition, and Accurate Welding filed a claim with Universal in excess of $160,000. Universal seeks a declaratory judgment from this court that Universal is not liable to Accurate Welding for any damages. In the alternative, Universal asks for a declaratory judgment that: (1) Accurate Welding is not entitled to consequential damages; (2) Universal's liability is limited to $4,200 because the damaged equipment was a "used commodity" under Universal's freight rules; or, (3) if the machine was not a "used commodity," that Universal's liability is limited to $100,000.

Damages may be awarded upon entry of a default judgment if the record adequately reflects the basis for awarding them, *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985); a court "is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Flynn v. Mastro Masonry Contractors*, 237 F. Supp.2d 66, 69 (D.D.C. 2002). So doing, the court must ensure that the plaintiff's well-pleaded allegations "actually state a substantive cause of action" with sufficient basis to award the relief sought. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The current record, however, does not clearly indicate what relief the court can grant Universal. As a case involving goods damaged during interstate shipment, Universal's liability is governed by the Carmack Amendment to the Interstate Commerce Act, which holds a carrier liable "for the actual loss or injury to the property" caused by the carrier during shipment. 49 U.S.C. § 14706(a)(1). A carrier can limit its liability under the Carmack Amendment "to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper[.]" *Id*. at § 14706(c)(1)(A). In order to accomplish this, a carrier must: (1) maintain a tariff, or freight rules, as prescribed by the guidelines of the Interstate Commerce Commission; (2) give the shipper a reasonable opportunity to choose between two or more levels of liability; (3) obtain the shipper's agreement as to the choice of liability; and (4) issue a receipt or bill of lading.[1] *Werner Enterprises, Inc. v. Westwind Maritime Int'l, Inc.*, 554 F.3d 1319, 1322 (11th Cir. 2009). A shipper can also issue the bill of lading. *See Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1270 (11th Cir. 2001). Bills of lading that incorporate tariff restrictions potentially operate to limit a carrier's liability. The Eleventh Circuit, however, has distinguished a tariff's application to bills of lading created by the carrier from those drafted by the shipper, indicating that liability limitations should be applied more strictly when a shipper prepares the document. *Compare Siren*,

---

[1] Although its most recent decisions continue to use this four-part test, the Eleventh Circuit has acknowledged that the 1994 and 1995 amendments to the Interstate Commerce Act altered the first requirement. *See Werner Enterprises, Inc v. Westwind Maritime Int'l, Inc*., 554 F.3d 1319, 1326 n.6 (11th Cir. 2009). Carriers are now required only to provide a shipper, on request, with a written or electronic copy of its rates and practices. *See* 49 U.S.C. § 13710(a)(1).

Case No.: 3:09cv292/MCR/EMT

249 F.3d at 1271 (stating that it is not "proper or necessary to protect shippers from themselves") *with Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 843 (11th Cir. 2003) (rejecting liability limits when carriers issue bills of lading not fully compliant with the Carmack Amendment). A shipper prepares a bill of lading only when it actually creates the document, "not when it merely fills in the blanks on one the carrier has created." *Sassy Doll*, 331 F.3d at 839.

In this case, Universal alleges that "a bill of lading was issued," but neither the complaint nor the supporting affidavit of Universal's cargo manager, Robert Johnson, indicates who created the document and who filled in its blanks. The issue is relevant here because, on its face, the bill of lading between Universal and Chromalloy does not appear to satisfy the second element of the Eleventh Circuit's four-part test. Universal's tariff Item 105 states that in order to choose full liability a shipper must complete three steps: (1) notify Universal in writing seven business days prior to shipping that the shipper is choosing full liability; (2) accept in writing Universal's freight weight at least two days before shipping; and (3) "place the following notation on the bill of lading: 'This shipment subject to full liability under 49 U.S.C. 14706.'" The bill of lading, however, only contains blanks for other information and provides no space for Item 105's required note. The Eleventh Circuit has stated under similar facts that "[f]orcing the shipper to express a choice where there is no proper place to do so [on the bill of lading] is not providing the shipper with a reasonable opportunity to choose" between liability levels. *Id*. at 843 (warning carriers who prepare such bills of lading to "take heed"). As in *Sassy Doll*, Universal's tariff also fails to tell the shipper where to place the full liability note on the bill of lading. The court, therefore, cannot determine on the present record whether Universal has properly limited its liability.

Even if Universal has limited its liability, the record fails to establish which tariff restriction applies. Universal claims it owes Accurate Welding $4,200 because the damaged welding machine, which is listed on the bill of lading as weighing 42,000 pounds, was a "used commodity." Tariff Item 137 defines that term as something "not manufactured by the shipper; previously owned and shipping for re-use or as a result of

re-sale" and limits damage to such items to ten cents per pound. Presumably, both parts of this definition must apply before something qualifies as a used commodity; otherwise, a new item manufactured by the shipper would be "used," creating a contradiction in terms. In this case, neither the complaint nor Johnson's affidavit states that the machine was not manufactured by Chromalloy, the shipper, or that it was shipped "for re-use or as a result of re-sale." The complaint alleges that the machine was "used equipment," but equipment can be used without being a "used commodity" under tariff Item 137. As a result, the record does not provide a sufficient basis for the court to determine that Universal's damages are limited under tariff Item 137.

Accordingly, it is ORDERED:

Universal shall file an amended motion within fourteen (14) days of the entry of this order showing how it has limited its liability to Accurate Welding, according to the Eleventh Circuit's four-part test. Universal shall also file an affidavit within fourteen days stating specific facts supporting its claim that the damaged machine was a "used commodity" as defined in tariff Item 137. The affidavit shall identify the party that created the bill of lading between Universal and Chromalloy and the party that filled in its blanks.

**DONE AND ORDERED** this 24th day of February, 2010.

                s/ *M. Casey Rodgers*
                **M. CASEY RODGERS**
                **UNITED STATES DISTRICT JUDGE**